**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

IN RE: 3M COMBAT ARMS
EARPLUG PRODUCTS LIABILITY
LITIGATION,                                             Case No. 3:19-md-2885

                                                        Judge M. Casey Rodgers
                                                        Magistrate Judge Gary R. Jones

This Document Relates to:

*United States of America v. 3M Company*
Case No. 3:20-mc-56
_____/

## ORDER

Pending before the Court is the Government's petition to quash

Defendants' non-party deposition subpoena to Dr. William J. Murphy (an

employee of the Centers for Disease Control and Prevention) pursuant to

Federal Rule of Civil Procedure 45 and *United States ex rel. Touhy v.*

*Ragen*, 340 U.S. 462 (1951) ("*Touhy*").  MC ECF No. 1.[1]  Magistrate Judge

Stephanie Bowman transferred the petition to quash from the Southern

District of Ohio to this Court on October 6, 2020, MC ECF No. 8, and

Defendants have filed a response in opposition, MC ECF No. 15.  For the

_____

[1] For ease of reference, citations to the docket in this miscellaneous matter (Case No.
3:20-mc-56-MCR-GRJ) are "MC ECF No. __."  Citations to the docket in the MDL (Case
No. 3:19-md-2885-MCR-GRJ) are "MDL ECF No. __."

reasons discussed below, the Government's petition is **GRANTED IN PART and DENIED IN PART**.

In the last four weeks, the Court has addressed individually the merits of challenges by federal agencies to *five* of Defendants' discovery subpoenas to current government employees.  *See* MDL ECF No. 1494 (N.D. Fla. Oct. 29, 2020) ("*Robinette*"); *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:20-mc-55, 2020 WL 6274824, at *1 (N.D. Fla. Oct. 26, 2020) ("*Toyama*"); *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:20-mc-54, 2020 WL 6140561, at *1 (N.D. Fla. Oct. 19, 2020) ("*Donaldson*"); *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:20-mc-53, 2020 WL 6065076, at *1 (N.D. Fla. Oct. 14, 2020) ("*Parker*"); *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:20-mc-49, 2020 WL 5994266, at *1 (N.D. Fla. Oct. 9, 2020) ("*Schulman*").  Four subpoenas (*Schulman*, *Parker*, *Donaldson*, and *Toyama*) were case-specific to the claims of Bellwether Plaintiffs in the MDL.  Three subpoenas (*Schulman*, *Parker*, and *Donaldson*) were directed to employees of the Department of Veterans Affairs.  And the other two (*Toyama* and *Robinette*) were to employees of the Department of Defense.

Although the instant petition to quash concerns a different (*sixth*) subpoena—and the first to an employee of the CDC (a component of the

2

Department of Health and Human Services ("DHHS"))—by now the parties are intimately familiar with the background, law, and arguments discussed previously that are also applicable here.  Therefore, for the sake of brevity, they will not be repeated unless it is necessary to understanding the Court's reasoning.

## I.  BACKGROUND

This multidistrict litigation is a collection of products liability actions concerned with whether Defendants were negligent in their design, testing, and labeling of the nonlinear dual-ended Combat Arms Earplug Version 2 (the "CAEv2").  Plaintiffs are servicemembers, veterans, and civilians seeking damages in this action for hearing loss, tinnitus, and related injuries caused by their use of the CAEv2.  MDL ECF No. 704.

The Government is not a party to this litigation, MDL ECF No. 704 at ¶¶ 16-20, but the parties have identified the United States' various agencies and employees as critical sources of third-party discovery. Relevant here, on January 9, 2020, Defendants sent CDC Director Robert Redfield a request to take the deposition of Dr. Murphy, a program coordinator for the National Institute for Occupational Safety and Health ("NIOSH") Hearing Loss Prevention Program.  MC ECF No. 15-1 at 4. Defendants advised the CDC that "Mr. Murphy conducted testing on [the]

3

CAEv2 on various occasions between 2001 and 2015, and communicated

the results of his testing to … others in the government or military, including

Army audiologist Doug Ohlin, and also individuals at Aearo." *Id.*

Defendants sought to depose Dr. Murphy regarding: "(i) test procedures,

test protocols, and test results related to testing on the CAEv2; and (iii)

correspondence and or communications pertaining to CAEv2 transmitted to

others in the United States government, including the military." *Id.*

Defendants supplemented their request to depose Dr. Murphy on

February 6, 2020.  MC ECF No. 15-2.  First, Defendants elaborated on the

topics for Dr. Murphy's proposed deposition:

> (i) test procedures, test protocols, and test results related to testing on the CAEv2, including an overview of the tests Mr. Murphy ran on the CAEv2, how Mr. Murphy fit the CAEv2 during his testing, how Mr. Murphy determined the appropriate procedure for fitting CAEv2 during his testing, whether Mr. Murphy was able to maintain an adequate fit during his testing, the results of Mr. Murphy's testing, and the attenuation achieved with CAEv2 under various testing and fit conditions; and (ii) correspondence and/or communications pertaining to CAEv2 between Mr. Murphy and others in the government, including the military, and/or representatives of Aearo or 3M.

*Id.* at 5.  Second, Defendants asserted that Dr. Murphy's testimony is

relevant to the claims in issue in the MDL because it would "show that [the]

CAEv2 provides adequate attenuation and is not defective," and that "the

government was on notice of [the] CAEv2 performance capabilities and limitations."  *Id.*

On July 23, 2020, the CDC denied Defendants' request to depose Dr. Murphy but authorized Dr. Murphy to provide to Defendants a limited declaration because "specific aspects of the testimony … you seek are in the interest of HHS/CDC to provide[.]"  MC ECF No. 15-3 at 3.  The CDC concluded, however, that "disclosing the requested information" in a declaration would be "less burdensome on the [NIOSH], more time efficient, and will avoid significant interruption of Dr. Murphy's official duties as a federal government employee."  *Id.*  Moreover, the CDC stated that "a declaration is a more suitable approach given Dr. Murphy's minor role in this matter and the ever-present demands that have been placed on NIOSH, CDC, and the Department in responding to the ongoing Coronavirus Disease 2019 pandemic."  *Id.*  The CDC limited the scope of the declaration to "a general explanation of Dr. Murphy's testing procedures, the fitting of the CAEv2 during his testing, his test results, and the attenuation achieved with the CAEv2" and declined to authorize Dr. Murphy "to address any testing he conducted that was not published or that did not concern the CAEv2."  *Id.*  The CDC attached the declaration to its response letter.  MC ECF No. 15-4.

5

Defendants filed a motion to compel Dr. Murphy's deposition, MDL ECF No. 1317, but the undersigned denied the motion as moot when Defendants served a subpoena on Dr. Murphy in accordance with Pretrial Order No. 50, MDL ECF No. 1358.  The subpoena, dated August 26, 2020, scheduled Dr. Murphy for a deposition on September 16, 2020, in Cincinnati, Ohio, or, alternatively, for a remote deposition.  MC ECF No. 15-6.  The subpoena also referred Dr. Murphy to the deposition topics set forth in Defendant's February 6, 2020, discovery request.  *Id.* at 2.

On September 9, 2020, DHHS objected to the deposition subpoena in a comprehensive letter to Defendants' counsel.  MC ECF No. 1-6. DHHS challenged the relevance of Dr. Murphy's testimony and asserted the subpoena was unduly burdensome, cumulative, and duplicative.  *Id.* at 1–2.  In support of its objections, DHHS cited the Court's denial of Defendants' motion for summary judgment on the government contractor defense, the CDC's production of published studies on the CAEv2 and Dr. Murphy's declaration, and Dr. Murphy's "COVID-19-related work as part of a CDC Workplace Safety and Health team[.]"  *Id.* at 1–3.  Additionally, DHHS objected to the subpoena to the extent it sought "information about Dr. Murphy's work regarding the CAEv2 that is unpublished or otherwise

not final" because that information is protected under the deliberative

process privilege.  *Id.* at 3.

Two days later, on September 11, 2020, the Government, on behalf

of DHHS and the CDC, filed the instant petition to quash Defendants'

deposition subpoena.  MC ECF No. 1.

## II.  LEGAL STANDARD

The Government's petition to quash is governed by the

Housekeeping Statute (5 U.S.C. § 301), the DHHS *Touhy* regulations (45

C.F.R. § 2.1, *et seq.*), and the Administrative Procedure Act ("APA") (5

U.S.C. § 706).  *Schulman*, 2020 WL 5994266, at **3–5; *see also*

*Westchester Gen. Hosp., Inc. v. Dep't of Health and Human Servs.*, 443 F.

App'x 407, 409 n.1 (11th Cir. 2011); *Moore v. Armour Pharm. Co.*, 927 F.2d

1194, 1197 (11th Cir. 1991).

In short, the Housekeeping Statute authorizes DHHS to adopt

regulations concerning testimony by agency employees and the production

of government documents. *Touhy*, 340 U.S. at 463.  When deciding

whether to authorize or preclude agency employees to testify or produce

documents, DHHS looks to whether "compliance with [such a] request

would promote the objectives of the Department[,]" 45 C.F.R. § 2.3,

because it is DHHS policy "to maintain strict impartiality with respect to

private litigants and to minimize the disruption of official duties[,]" 45 C.F.R.
§ 2.1(b).  Finally, if the agency's decision is challenged on a motion to
quash or motion to compel, the Court must determine whether it is arbitrary
and capricious under the APA, such that the agency failed to "examine[] the
relevant data" or articulate "a rational connection between the facts found
and the choice made," *Dep't of Commerce v. New York*, 138 S. Ct. 2551,
2569 (2019).

## III.  DISCUSSION

### A.    The Government's Petition and Defendants' Response

Turning to the dispute at hand, the Government argues that the
CDC's decision[2] to preclude Dr. Murphy deposition is not arbitrary and
capricious because the CDC "produced a detailed declaration from Dr.
Murphy disclosing: (1) his testing procedures regarding the CAEv2[;] (2)
how the CAEv2 was fit during testing[;] (3) test results regarding the
CAEv2[;] and (4) the attenuation achieved with the CAEv2 during testing."
MC ECF No. 1 at 11; *see also id.* at 12.  In the same vein, the Government
contends that it is not arbitrary and capricious for the CDC to not authorize
the disclosure of Dr. Murphy's "testing that did not concern CAEv2 or

---

[2] From here on, the Court's reference to the "CDC's decision" includes the September 9,
2020, DHHS response to Defendants' subpoena, MC ECF No. 1-6, as well as the July
23, 2020, CDC response to Defendants' initial *Touhy* requests, MC ECF No. 15-3.

testing that was not published" because this was beyond the scope of Defendants' initial discovery request, is irrelevant to the claims and defenses in the MDL, and "is not representative of an official CDC position or conclusion[.]" *Id.* at 11–12.  The Government argues, in the alternative, that the Court should quash the subpoena to Dr. Murphy under the Federal Rule of Civil Procedure 45 because it imposes an undue burden on the CDC and Dr. Murphy.  *Id.* at 13–15

Defendants argue, in response, that the CDC's decisions to limit Dr. Murphy's testimony to a declaration and to only published testing on the CAEv2 are arbitrary and capricious.  MC ECF No. 15 at 3–5.  Defendants also challenge the Government's assertion of undue burden as conclusory and unsupported by the administrative record.  *Id.* at 5–6.

## B.    APA Review

The appropriate starting point for APA review in this case is to point out what is not in dispute.  Unlike most of the Government's prior challenges to Defendants' discovery subpoenas, the instant petition arises from a federal agency's decision to grant in part Defendants' initial *Touhy* request.  ECF No. 1 at 2.  That is, the CDC concluded it was appropriate under the DHHS *Touhy* regulations to authorize the disclosure of at least some of Dr. Murphy's testimony regarding CAEv2 testing by NIOSH.  MC

9

ECF No. 15-3 at 3.  The question before the Court, therefore, is not whether the CDC's decision contravenes the policy considerations set forth 45 C.F.R. § 2.1(b), 2.3, which, in the Court's view, are exceedingly broad compared to the *Touhy* regulations of other federal agencies.  Instead, the instant dispute boils down to the CDC's decisions to limit Dr. Murphy's testimony to a declaration (citing undue burden) and to preclude the disclosure of unpublished testing (citing relevance and the deliberative process privilege).

First, the Court concludes that the CDC's decision to offer a declaration in lieu of a deposition is arbitrary and capricious.  As a threshold matter, any documents the CDC produced to Defendants, including Dr. Murphy's declaration, cannot express Dr. Murphy's testimony "with the clarity and tone as he personally can in his deposition."  *In re Vioxx Prods. Liab. Litig.*, 235 F.R.D. 334, 346 (E.D. La. 2006).  Put simply, "[a] declaration is … not an adequate substitute for live testimony, such as a deposition."  *Cavanaugh v. Wainstein*, No. 05-123 (GK), 2007 WL 1601723, at *10 (D.D.C. June 4, 2007).  "[S]uch an approach eschews the opportunity for opposing counsel to probe the veracity and contours of the statements," and "counsel propounding the … question is denied the

opportunity to ask probative follow-up questions." *Alexander v. F.B.I.*, 168

F.R.D. 113, 121 (D.D.C. 1998).

Additionally, the claims of undue burden by the CDC, and now the

Government, are unavailing.  For the most part, the CDC offered mostly

generalized assertions about the burden of having Dr. Murphy prepare and

sit for a deposition, mainly the depletion of scarce resources and the

interruption of CDC official duties.  *See* MC ECF No. 1-6 at 2–3; MC ECF

No. 1 at 6.  These sweeping statements, which do not explain an actual

disruption from or impact of complying with discovery, is insufficient

because it does not evince any effort by the CDC to examine the actual

evidence before it.  *Donaldson*, 2020 WL 6140561, at *4; *OhioHealth Corp.*

*v. U.S. Dep't of Veteran Aff.*, No. 2:14-cv-292, 2014 WL 4660092, at *6

(S.D. Ohio Sept. 17, 2014).  A ruling to the contrary would fashion an

impermissible "blanket ban on all requests for testimony," *Moore*, 927 F.2d

at 1198, which is tantamount to an evidentiary privilege that the

Government does not enjoy.

Understandably, the CDC and the Government cite to Dr. Murphy's

role related to the COVID-19 pandemic, but, even so, the Government

"may not refuse to comply with a subpoena by generally asserting there is

a national crisis or that it cannot perform essential government functions."

11

*Sentinel Cap. Orlando, LLC v. Centennial Bank*, No. 6:12-cv-785-Orl-36GJK, 2013 WL 12156678, at *6 (M.D. Fla. Apr. 2, 2013); *see also Toyama*, 2020 WL 6274824, at *5.  This assertion fails on close inspection. The CDC failed to offer any rational explanation as to why Dr. Murphy's remote deposition could not take place around his work obligations and at a time convenient for him.  Although this Court must defer to the CDC's judgment as to "the time and effort involved in preparing the employees for their depositions and testimony and how that time commitment might hamper their ability to fulfill their duties," *Solomon v. Nassau Cty.*, 274 F.R.D. 455, 459 (E.D.N.Y. 2011),[3] its failure to consider accommodation for a brief deposition was error.  *Rhoads v. U.S. Dep't of Veteran Aff.*, 242 F. Supp. 3d 985, 994–95 (E.D. Cal. 2017); *Ceroni v. 4Front Engineered Sols.*, 793 F. Supp. 2d 1268, 1278 (D. Colo. 2011).

Second, the Court concludes that the CDC's decision to preclude Dr. Murphy from disclosing information concerning unpublished testing of the CAEv2 is not arbitrary and capricious.  The parties argue over the relevance of this information, MC ECF No. 1 at 11; MC ECF No. 15 at 4,

---

[3] *See also COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 278 (4th Cir. 1999) ("When an agency is not a party to an action, its choice of whether or not to comply with a third-party subpoena is essentially a policy decision about the best use of the agency's resources.").

but the CDC also asserted it was subject to the deliberative process privilege, MC ECF No. 1-6 at 3.  Defendants do not address the CDC's assertion of privilege, but the Court must consider it because "[i]t is well understood in administrative law that a reviewing court will uphold an agency action resting on several independent grounds *if any of those grounds* validly supports the result."  *Pierce v. S.E.C.*, 786 F.3d 1027, 1034 (D.C. Cir. 2015) (emphasis added).  Because the CDC was "certainly entitled to consider the risk to privileged information and the burden this would place on the agency in determining whether to" authorize Dr. Murphy's testimony, its ultimate decision based on this consideration is not arbitrary and capricious.  *Agility Pub. Warehousing Co. K.S.C.P. v. U.S. Dep't of Defense*, 246 F. Supp. 3d 34, 48 (D.D.C 2017).

In sum, the CDC's decision to limit Dr. Murphy's testimony to a declaration, in lieu of a deposition, is arbitrary and capricious, but its decision to preclude testimony on unpublished testing of the CAEv2 is not. Therefore, the Government's petition to quash is due to be granted in part and denied in part under APA review.

## C.    Federal Rules of Civil Procedure

The Government's reliance on the Federal Rules of Civil Procedure fares no better.  The Court must quash a subpoena that "subjects a person

13

to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv).  The Government, as the

movant seeking to quash the subpoena, bears the burden of proof on this

issue.  *In re Application of Mesa Power Grp., LLC*, 878 F. Supp. 2d 1296,

1306 (S.D. Fla. 2012); *Fadalla v. Life Auto. Prods., Inc.*, 258 F.R.D. 501,

504 (M.D. Fla. 2007).  Courts consider a variety of factors to determine

whether a subpoena is unduly burdensome—the relevance of the

information requested, the requesting party's need for discovery, the

breadth of the request, the time period covered, the particularity of the

request, and the burden imposed—but it is typically required that the

movant submit an affidavit or other evidence revealing the nature of the

asserted burden.  *Andra Grp., LP v. JDA Software Grp., Inc.*, 312 F.R.D.

444, 449 (N.D. Tex. 2015); *see also John v. Keller Williams Realty, Inc.*,

No. 6:19-cv-1347-Orl-40DCI, 2019 WL 7482200, at *2 (M.D. Fla. Nov. 19,

2019) ("Claims of undue burden should be supported by a statement

(generally an affidavit) with specific information demonstrating how the

request is overly burdensome.").

Here, the Government has not presented an affidavit or other

evidence in support of its claim of undue burden.  This alone is a basis to

reject the Government's claim.  *Green v. Cosby*, 152 F. Supp. 3d 31, 37 (D.

Mass. 2015).  Nevertheless, the Court has considered the evidence

14

proffered by the Government and, for the reasons explained above, concludes that Defendants' subpoena does not present an undue burden on the CDC or Dr. Murphy.  Defendants have asked Dr. Murphy to attend a brief, remote deposition so he may explain his testing and testify within his area of expertise.  Compliance may be an inconvenience for Dr. Murphy, but this is no different from a Rule 45 deposition subpoena issued to any non-party.  Therefore, the Government's petition to quash Defendants' subpoena on this basis is denied.

## IV.  CONCLUSION

Accordingly, it is **ORDERED** that the Government's petition to quash, MC ECF No. 1, is **GRANTED IN PART and DENIED IN PART**. Defendants **must** serve a copy of this order by email on Jacqui Snead at the Department of Justice, DHHS Counsel L. Michael Rafky, and Plaintiffs' Lead Counsel Bryan F. Aylstock.

**DONE AND ORDERED** this 2nd day of November 2020.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge